IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KEVIN P. BURKE,**

    **Plaintiff,**                                    Civil Action 2:21-cv-48

    v.                                       Magistrate Judge Elizabeth P. Deavers

**OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION,** *et al.***,**

    **Defendants.**

**OPINION AND ORDER**

This matter is before the Court to consider the Motion to Compel filed by Defendants the Ohio Department of Rehabilitation and Correction, Warden Emma Collins, Director Annette Chambers-Smith, Chief Inspector Chris Lambert, and Deputy Chief Inspector Roger Wilson (the "ODRC Defedants"). (ECF No. 35.)  Defendant Global Tel*Link Corporation ("GTL") has joined the motion, in part. (ECF No. 37.)  Plaintiff Kevin Burke has filed a Response (ECF No. 45) and Defendants have filed Replies (ECF Nos. 46, 47).  For the following reasons, the Motion to Compel (ECF No. 35) is **GRANTED, in part**, and **DENIED, in part.**  Also before the Court is GTL's Motion for Leave to File a Supplemental Reply Brief.  (ECF No. 48.)  As ordered by the Court, Plaintiff filed an expedited Response to the Motion for Leave.  (ECF No. 50.)  As explained below, the Motion for Leave (ECF No. 48) is **DENIED.**

I.

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the

2

motion to compel includes "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Consistent with this, Local Rule 37.1 requires the parts to "exhaust[] among themselves all extrajudicial means for resolving their differences" before filing an objection, motion, application, or request relating to discovery. S.D. Ohio Civ. R. 37.1. Local Rule 37.1 also allows parties to first seek an informal telephone conference with the Judge assigned to supervise discovery in the case, in lieu of immediately filing a discovery motion. *Id.*

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). "The proponent of a motion to compel discovery bears

the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original)). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case,

4

the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery'" because "'[r]estoring proportionality' is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions." *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)). In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome,' not merely expensive or time-consuming." *Id.* (citing *Surles*, 474 F.3d at 305) (emphasis in original).

## II.

Plaintiff brings claims under 42 U.S.C. § 1983 alleging various Constitutional violations. First, Plaintiff asserts that ODRC's social media policy violates his First Amendment rights and his Due Process rights under the Fourteenth Amendment. (Counts I through III.) Additionally, Plaintiff contends that ODRC violated his Fourth Amendment rights by the unlawful search and seizure of his private property without probable cause. (Count IV.) Similarly, Plaintiff claims that Defendants Lambert, Wilson and GTL violated both his First Amendment and Fourth Amendment rights by the unlawful search and seizure of his private property without probable cause. (Counts V and VI).

These claims are based on the following allegations set forth in the Amended Complaint. (ECF No. 13.) Plaintiff was employed by ODRC as a Corrections Officer at the Pickaway County Correctional Institution located in Orient, Ohio. (*Id*. at ¶ 5.) Defendant Lambert is the

Chief Inspector for ODRC. (*Id.* at ¶ 7.) Defendant Wilson is a Deputy Chief Inspector for ODRC. (*Id.* at ¶ 8.) GTL, a Virginia corporation, provides communications and data services, including the accessing of social media sites for intelligence gathering purposes for ODRC. (*Id.* at ¶¶ 9, 10.)

ODRC has a specific written policy regarding its employees use of social media. (*Id.* at ¶ 22.) Defendant Lambert, prompted by his receipt of an anonymous email, requested that GTL gather "intelligence" regarding "ODRC employees publicly posting racially or politically charged materials on social media." (*Id.* at ¶¶ 40, 41.) On June 19, 2020, ODRC accessed information about Plaintiff and other individuals utilizing GTL as an agent for its access. (*Id*. at ¶ 38.) Specifically, GTL, acting as an agent for, and with ODRC, conducted a warrantless search of the ODRC employees' social media, including Plaintiff's Facebook® Accounts. (*Id*. at ¶ 46.) Both Defendants Lambert and Miller, acting under color of state law, directed GTL to access and seize Plaintiff's private property, specifically information from Plaintiff's Facebook account. (*Id*. at ¶¶ 7, 8.)

ODRC and GTL did not provide Plaintiff notice of this search as required under ODRC's surveillance or subpoena policies. (*Id*. at ¶¶ 47, 49.) Ultimately, Plaintiff was terminated on October 15, 2020, for alleged violations of employee conduct standards (*Id*. at ¶¶ 19-21.)

As relevant to the current motion, the ODRC Defendants contend that they merely reviewed information Plaintiff chose to make public to which he had no reasonable expectation of privacy and deny that they violated Plaintiff's Fourth Amendment rights. (*See, e.g.,* ECF No. 16 at ¶¶ 46, 49.) GTL also contends that Plaintiff's Facebook posts were publicly available such that Plaintiff had no expectation of privacy in his posts and his Fourth Amendment claim must fail. (*See, e.g.,* No. 36 at ¶¶ 38-40.)

6

## III.

The ODRC Defendants have moved to compel responses to two requests for admission, four interrogatories, and two requests for production of documents. GTL has joined in the motion to compel as it relates to one of the requests for production. The Court will address each category, in turn.

### A. Requests for Admission

The ODRC Defendants seek to compel responses to the following requests for admission, set forth verbatim below, along with Plaintiff's responses:

> **Request for Admission No. 3:** Admit that Defendants' review of your public Facebook pages did nothing to interfere with your use of the Facebook account.
>
> **RESPONSE:** Plaintiff objects to this request. Because of the access of the Defendants and/or their Agents to Plaintiff's Facebook account, Plaintiff has no idea who, how or what may have been done nor does he have any knowledge at the time of giving this response who, how or what may have been done to his account by anyone. Further, Plaintiff objects to this request. Plaintiff's Complaint contains no averment of any interference with his use of his Facebook account. Plaintiff admits that he has knowledge that Defendant GTL accessed his account, avers that such access was illegal but has not yet determined from GTL what the scope of their access involved or if it interfered with Plaintiff's access. Further, the request is not relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit and is therefore beyond the scope of discovery pursuant to FRCP 26(b)(1). Plaintiff therefore Denies the same.
>
> **Request for Admission No. 4:** Admit that Defendants' review of your public Facebook pages did nothing to deprive you of any information that was contained on or within your Facebook account.
>
> **RESPONSE:** Plaintiff objects to this request. The request is not relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the actin, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit and is therefore beyond the scope

of discovery pursuant to FRCP 26(b)(1). Because of the access of the Defendants to Plaintiff's Facebook account, Plaintiff has no idea who, how or what may have been done nor does he have any knowledge at the time of giving this response who, how or what may have been done to his account by anyone. Further, Plaintiff's Complaint contains no averment of any deprivation of information associated with his use of his Facebook account. Plaintiff admits that he has knowledge that Defendant GTL accessed his account but has not yet determined from GTL the scope of their access involved or if it interfered with Plaintiff's access. Plaintiff therefore denies the same.

The ODRC Defendants contend that these requests are relevant and within the proper scope of discovery because Plaintiff's allegations suggest that "something was taken from him, not just that his information was viewed in an unauthorized way." (ECF No. 35 at 4.) In response, Plaintiff asserts that he has answered and responded as fully as possible with the information he currently possesses. Further, he contends that, given the purpose of requests for admission, Defendants' motion as directed to these requests is premature. The Court agrees.

The Court notes that the proper procedural mechanism by which the ODRC Defendants should challenge Plaintiff's response to RFA Nos. 3 and 4 falls under Rule 36(a)(6) instead of motion to compel under Rule 37. *Snyder v. Fleetwood RV, Inc.*, No. 2:13-cv-1019, 2016 WL 339972, at *7 (S.D. Ohio Jan. 28, 2016). The Court, however, directed the parties to file a comprehensive motion to compel regarding all of the subject discovery disputes and will construe Defendants' Motion to Compel as it relates to these requests as having been filed pursuant to Rule 36(a)(6). *Id.*

The Court finds that these particular requests are improper as they do not serve the purpose of Federal Rule of Civil Procedure 36. *See Hendricks v. Ohio Dep't of Rehab. & Corr.*, No. 2:11-CV-40, 2012 WL 2075317, at *5 (S.D. Ohio June 8, 2012) ("Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.") (quoting *Misco, Inc. v. United States Steel*

*Corp.,* 784 F.2d 198, 205 (6th Cir. 1986)); *Cogent Sols. Grp., LLC v. Brown*, No. 2:12-CV-665, 2013 WL 12121522, at *3 (S.D. Ohio Mar. 4, 2013) ("Requests for admissions...differ from other discovery tools contemplated under the Federal Rules of Civil Procedure. Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.") (internal quotation marks and citations omitted).

These requests appear to be crafted for purposes of discovery rather than to eliminate the necessity of proving facts that are not in substantial dispute. Such requests are improper. *Hendricks*, 2012 WL 2075317, at *5 (denying a motion to compel regarding a request for admission that "does not comply with Federal Rule of Civil Procedure 36(a) and more closely resembles an attempt to utilize Rule 36 as a general discovery device."); *Quicken Loans v. Jolly*, No. 2:07-cv-13143, 2007 WL 3408551, at *1-2 (E.D. Mich. Nov. 15, 2007) ("[R]equests for admissions as to central facts in dispute are beyond the proper scope of the rule. Such requests have consistently been held improper.") (quoting *Pickens v. Equitable Life Assurance Soc.*, 413 F.2d 1390, 1393 (5th Cir. 1969) (collecting cases)). Moreover, to the extent these Requests would be considered proper, Plaintiff has responded with a denial. Accordingly, the Motion to Compel is **DENIED** as to these Requests.

### B. Interrogatories

Rule 33(a)(2) sets forth the permissible scope of written interrogatories. The rule provides, "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

The ODRC Defendants seek to compel responses to the following interrogatories, set forth verbatim below, along with Plaintiff's responses, and considered in turn.

9

> **Interrogatory No. 3**: During your investigatory interview with Defendant Roger Wilson, you asserted your Facebook account was "hacked" and you knew that because you saw "stuff on [your] page" that you did not put there. Identify the 'stuff' to which you were referring.
>
> **RESPONSE:** My privacy settings were stuff that was changed May 10, June 20, July 4, and July 15 and August 22, 2020. Plaintiff remembers an incident of a matter being posted for which he has no memory of the substance and which was called to his attention by his wife who also has no remembrance of the substance in that matter was deleted once before the first matter giving rise to the investigation of posting which ultimately led to his removal. Plaintive also recites that all of the postings which formed the basis of the recitations on his notice of removal were matters that he either authored or caused to appear there by either pasting or forwarding from other Facebook participants.

The ODRC Defendants contend that Plaintiff's answer that his "privacy settings were stuff that was changed" is not responsive to the interrogatory. Beyond this they assert that the remainder of Plaintiff's response is confusing and appears inconsistent with his responses to Interrogatory Nos. 16 and 18 wherein he stated that he did not change any posts nor did anyone do so on his behalf. Accordingly, at minimum, these Defendants seek clarification of Plaintiff's response. For his part, Plaintiff contends that he has answered the question and, to the extent Defendants need clarity, they can depose him, making their request here unduly burdensome.

The Court finds that, to the extent Plaintiff has answered that his "privacy settings were stuff that was changed," he has responded to the interrogatory. However, the Court agrees that his additional commentary appears inconsistent with his responses to Interrogatories 16 and 18. (*See* ECF No. 35-2 at 12-13.)[1] To this extent, the Motion to Compel is **GRANTED** and Plaintiff must clarify his response to Interrogatory No. 3.

---

[1] Interrogatory No. 16: Identify and describe each Facebook post you have deleted from your Facebook account from January 1, 2018 to the present. For each deleted post, state the date the deletion was made.

RESPONSE: Plaintiff objects to this request. … Plaintiff was not charged with any other misconduct or Rule of Conduct violation on any other social media account other than the one

10

**Interrogatory No. 5:** Identify whether you have had any another Facebook accounts, pages or Messenger since January 1, 2018.

**RESPONSE:** Plaintiff objects to this request. The request is not relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit and is therefore beyond the scope of discovery pursuant to FRCP 26(b)(1). Plaintiff was not charged with any other misconduct or Rule of Conduct violation on any other social media account other than the one from which the Defendants' investigated and all of which were made part of the removal order. As such the Defendants are limited to defense of the removal order and not any other social media posts of the Plaintiff.

Further, Plaintiff has never made any changes at all to his security settings on Facebook or the Messenger account that accompanies it. All original settings and any changes were made by his wife as she attempted to increase his security level and monitored account activity.

The ODRC Defendants explain that examining Plaintiff's "practices with other accounts may reveal evidence concerning his understanding and utilization of privacy settings, which would be directly relevant to rebut his claim that he didn't know or

---

from which the Defendants' investigated and all of which were made part of the removal order. As such the Defendants are limited to defense of the removal order and not any other social media posts of the Plaintiff. Without waiving objection, Plaintiff state he did not change anything.

Interrogatory No. 18: Identify every Facebook post you asked another person to delete whether on your Facebook account or theirs. If you asked another person to delate a post or posts from a Facebook account not your own, describe the post involved and state when you made the request.

RESPONSE: Plaintiff objects to this request. … Plaintiff was not charged with any other misconduct or Rule of Conduct violation on any other social media account other than the one from which the Defendants' investigated and all of which were made part of the removal order. As such Defendants are limited to defense of the removal order and not any other social media posts of the Plaintiff.

However, without waiving objections, in further answering, Plaintiff states he has not acted in any manner as Interrogatory 18 has made inquiry about. Without waiving objection, Plaintiff state he did not delete, or obtain anyone else, to delete anything.

11

understand how to use these settings, as well as his general practices with regard to such settings." (ECF No. 35 at 6.) In response, Plaintiff contends that this request is irrelevant because his behavior with respect to any other accounts has no bearing on his claim in this case. In Plaintiff's view, the issue here is whether GTL "accessed [his] account when the settings were such that [he] had an expectation of privacy as to his Wall posts." (ECF No. 45 at 10.) As Plaintiff explains it, his "privacy settings will only be an issue if it appears that GTL[] accessed [his] account when his privacy settings were such that he had an expectation of privacy." (*Id*.) Further, Plaintiff asserts that the second issue is whether GTL made use of the metadata from his account and the impact on his right to privacy regarding this information, separate and apart from his observable Wall posts.

With respect to the issue of Plaintiff's expectation of privacy "[c]ourts apply a two-part test to assess whether a plaintiff had the reasonable expectation of privacy required to assert a Fourth Amendment challenge." *Flynn v. City of Lincoln Park*, No. 2:18-CV-12187, 2020 WL 344854, at *7 (E.D. Mich. Jan. 21, 2020), *appeal dismissed sub nom. Flynn v. City of Lincoln Park, MI,* No. 20-1133, 2020 WL 4673338 (6th Cir. June 9, 2020) "That inquiry asks: (1) whether the plaintiffs 'manifest[ed] a subjective expectation of privacy in the premises searched'; and (2) whether society is 'prepared to recognize that expectation as legitimate.'" *Id.* (quoting *Bonds v. Cox*, 20 F.3d 697, 701 (6th Cir. 1994)); *see also United States v. Miller*, 982 F.3d 412, 426 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2797 (2021) (the definition of "search" within the Fourth Amendment context requires courts "to consider whether a person has an expectation of privacy in the space the government invaded and whether that subjective expectation is objectively reasonable.") Courts have held that there can be no reasonable expectation of privacy in public accounts or content shared publicly. *See United States v.*

12

*Dixson*, No. 19-20305, 2021 WL 4260673, at *2 (E.D. Mich. Sept. 20, 2021) (citing *United States v. Meregildo*, 883 F. Supp. 2d 523, 525 (S.D.N.Y. 2012) (holding that a Facebook user had no reasonable expectation of privacy that his Facebook friends would not share the information that the user posted on Facebook); *see also Farrad v. United States*, No. 3:14-CR-110-TAV-DCP, 2021 WL 3160493, at *4 (E.D. Tenn. July 26, 2021) (citing *Meregildo* and noting, in the context of rejecting habeas petitioner's ineffective assistance of counsel claim, that social media content shared on the internet is not afforded protection by the Fourth Amendment).

The Court agrees that information regarding Plaintiff's understanding of privacy settings generally has some relevance to Plaintiff's ability to demonstrate his reasonable expectation of privacy as it relates to his Facebook account at issue here. This Interrogatory, as drafted, however, is not addressed to that issue. If Defendants want to know how Plaintiff understands and handles privacy settings, they can propound a more focused interrogatory. Accordingly, the Court will not direct Plaintiff to further respond to it and the Motion to Compel is **DENIED** as to Interrogatory No. 5.

> **Interrogatory No. 13:** Identify all the persons/profiles that are "friends" on your Facebook account from 2018-present, including the physical address, email address, twitter handle, name and telephone number of each person or profile lists.
>
> **RESPONSE:** Plaintiff objects to this request. The request is not relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit and is therefore beyond the scope of discovery pursuant to FRCP 26(b)(1). Plaintiff was not charged with any other misconduct or Rule of Conduct violation on any other social media account other than the one from which the Defendants' investigated and all of which were made part of the removal order. As such the Defendants are limited to defense of the removal order and not any other social media posts of the Plaintiff.

>**Interrogatory No. 14**: Identify each person/profile you have "unfriended" on your Facebook account from January 1, 2018 to the present. For each such unfriending, state the date you unfriended that person/profile.
>
>**RESPONSE:** Plaintiff objects to this request. The request is not relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit and is therefore beyond the scope of discovery pursuant to FRCP 26(b)(1). Plaintiff was not charged with any other misconduct or Rule of Conduct violation on any other social media account other than the one from which the Defendants' investigated and all of which were made part of the removal order. As such the Defendants are limited to defense of the removal order and not any other social media posts of the Plaintiff.

The ODRC Defendants, taking these two Interrogatories together and in connection with Request for Production No. 3, assert that they "seek information that may contradict Plaintiff's assertions that his Facebook account was not intended to be open for viewing by persons other than his 'friends.'" (ECF No. 35 at 7.) Request for Production No. 3 states in its entirety:

>**Request for Production No. 3:** Produce a list of all the persons/profiles that are "friends" on your Facebook account from 2018-present, including the physical address, email address, twitter handle, name and telephone number of each person or profile listed.

These Defendants explain, consistent with the discussion above, that public social media accounts cannot support a Fourth Amendment claim and that, if a person's friends can share posts, the same is true for non-public accounts. According to the ODRC Defendants, they have screen shots of Plaintiff's Facebook posts and these screen shots reveal the identity of certain people.

In response to Interrogatory No. 13, and presumably by extension, Request for Production No. 3, Plaintiff contends that they are overbroad and beyond the relevant timeframe. Further, he asserts that it is not necessary to involve non-parties in order to determine his understanding of his privacy settings. Additionally, he suggests that the most efficient approach here is to allow him to confirm whether the persons identified in the screen shots are his Facebook friends. With respect

14

to Interrogatory No. 14, Plaintiff does not object but merely states that he has identified two individuals he has unfriended.

In reply, the ODRC Defendants assert that, with respect to Plaintiff's objection to the timeframe, when Plaintiff was interviewed by Defendant Wilson in August 2020, Plaintiff informed Defendant Wilson that he had had his Facebook account for "'maybe a year'" such that going back to the date of the account's establishment is not an "overreach." (ECF No. 46 at 5 n.1.) Further, these Defendants explain that contrary to Plaintiff's understanding, they are not seeking information about non-parties' privacy settings but that by "allowing people to comment on his Facebook account, Plaintiff has made their identity relevant." (ECF No. 46 at 5.) Finally, they argue that, to the extent Plaintiff has answered Interrogatory No. 14, his answer is incomplete.

The Court agrees that Plaintiff's response to Interrogatory No. 14 is incomplete. Accordingly, Plaintiff is required to supplement his response to this Interrogatory and the Motion to Compel is **GRANTED** to this extent. With respect to Interrogatory No. 13, the Court agrees that the identity of Plaintiff's Facebook friends is relevant to the issue of his reasonable expectation of privacy. However, the Court finds the Defendants' proposed timeframe dating back to January 2018 to be overly broad. Given the ODRC's reliance on Plaintiff's representation in August 2020 that he had had the account for "maybe a year," they have not demonstrated the relevance of any information dating back 2018. Instead, the Court finds that an initial date of January 1, 2019, is more consistent with Plaintiff's representation. Further, and to be clear, the Court does not interpret this Interrogatory as directed to any private account information belonging to any third parties. Additionally, the Court finds no merit to Plaintiff's suggestion that Defendants should be limited to simply asking him to confirm whether certain identified individuals are his Facebook friends. Accordingly, Plaintiff is **DIRECTED** to respond

to Interrogatory No. 13, as modified, and the Motion to Compel is **GRANTED** to this extent. Finally, Request for Production No. 3 is wholly duplicative of this Interrogatory and the Court will not direct Plaintiff to respond to it.

### C. Request for Production

A party may file a motion to compel discovery when a party fails to produce documents or allow for inspection as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B). The ODRC Defendants seek to compel a response to the following request for production, set forth verbatim below.

> **Request of Production No. 9:** Produce the login credentials for your Facebook account to allow Defendants and/or their expert witnesses to inspect the information associated with that account.

Plaintiff has objected to the request and has declined to produce the information. In moving to compel, the ODRC Defendants contend that, given Plaintiff's claims here, a forensic review of his Facebook account and any changes made to that account is "appropriate and necessary." (ECF NO. 35 at 8.) According to these Defendants, their expert "may be able to determine what privacy settings were changed and when, who were and were not 'friends' of Plaintiff [], and whether [Plaintiff] has undertaken efforts to change, conceal or delete any information on his account." (*Id*.) Defendant GTL has joined in the Motion to Compel as it relates to this Request for Production. (ECF No. 37.)[2] GTL agrees that, if Plaintiff's Facebook account was public, his Fourth Amendment claim cannot survive.

---

[2] GTL explained in joining the ODRC Defendants' motion, it had not yet served its own discovery requests. (ECF No. 37 at n.1.)

In response, Plaintiff contends this Request is a fishing expedition but explains that he responded to it by letter dated October 14, 2021. (ECF NO. 45-2.) As relevant to this Request, that letter states, as reprinted here verbatim:

> First, Mr. Burke has made no claim that his "account" was seized. It was *information* in his account that was seized by GTL and it appears GTL does data mining, which can be discovered, as to how much more than just his posts that resulted in his removal was obtained. Further, any changes alleged changes that Mr. Burke may have made, which is unsupported by any investigation fact or conclusion, and which he denies ever making with regard to to any of the identified posts which formed the basis of his removal, are not relevant to the issue of whether the posts are protected speech. The ODRC made the accusation with the identified postings on the notice of removal as being violative of their policy and rules of conduct. Mr. Burke has never asserted that any of the positings have been altered or changed prior to or since his removal or that what he posted were altered or changed at any time. Again ODRC must live with what the used as evidence against Mr. Burke. Any other information regarding the posts is not relevant to whether the post is, or is not, protected speech. Further, any seizure of information by GTL for ODRC does not depend on its lawfulness as protected speech, but rather whether or not any information that GTL may have gathered that was not accessible to the public, i.e. meta data of any kind, was lawfully obtained.

(*Id.*) Plaintiff states that it would be "imprudent" to provide his Facebook credentials to the "very entity he alleges unlawfully entered and obtained information from his account." (ECF No. 45 at 12.) However, he suggests that, once he has conducted discovery directed to GTL and understands GTL's ability to access his account and its privacy settings, he may be willing to provide the information for a "controlled" forensic review.

In reply, the ODRC Defendants reiterate that the issues in this case warrant a forensic review. For its part, GTL contends that, if Plaintiff does not want to provide his log-in credentials, he need only admit its Request for Admission No. 2. ("Admit that each of the Notice of Removal Posts was publicly accessible in June 2020.") (ECF NO. 47 at 3 n.1.) [3] Relatedly,

---

[3] GTL served its Requests for Admission on February 24, 2022, making Plaintiff's responses due after the Reply deadline.

17

GTL has filed a Motion for Leave to file a Supplemental Reply confirming that Plaintiff now has responded to its Request for Admission No. 2 but asserting that his response indicates that he is resisting discovery on this central issue. In his expedited response, Plaintiff reiterates that a Request for Admission is not a proper discovery device, a Supplemental Reply to the ODRC's Motion to Compel is not the correct vehicle to address this matter, and that, regardless, his response complies with Federal Rule of Civil Procedure 36(a)(4).

The parties do not appear to dispute the need for a forensic review of Plaintiff's Facebook account. Rather, they seem to disagree as to the timing of such a review and the protocol under which any such review will be conducted. None of the parties have addressed these specific issues in any meaningful detail in their briefing. Given this extremely limited state of the record, the Court **DENIES** the Motion to Compel as to this Request for Production. The parties are **DIRECTED** to meet and confer on these issues. If the parties are unable to reach agreement, they may request a further conference with the Court. Additionally, GTL's Motion for Leave (ECF No. 48) is **DENIED**.

### IV.

In sum, the Motion to Compel (ECF No. 35) is **GRANTED, in part**, and **DENIED, in part,** as set forth above. The Motion for Leave (ECF No. 48) is **DENIED.**

**IT IS SO ORDERED.**

**Date:  April 14, 2022**                     */s/ Elizabeth A. Deavers*
                                              **ELIZABETH A. PRESTON DEAVERS**
                                              **UNITED STATES MAGISTRATE JUDGE**