IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KEVIN P. BURKE,**

      **Plaintiff,**                                                     Civil Action 2:21-cv-48

      v.                                                          Magistrate Judge Elizabeth P. Deavers

**OHIO DEPARTMENT OF
REHABILITATION AND CORRECTION,**
*et al.*,

      **Defendants.**

**OPINION AND ORDER**

This matter is before the Court for consideration of a Motion for Leave to File a Second Amended Complaint filed by Plaintiff Kevin P. Burke. (ECF No. 62.) Defendant Global Tel*Link Corporation ("GTL") has opposed the motion (ECF No. 63) as have Defendants Ohio Department of Rehabilitation and Correction, Annette Chambers-Smith, Emma Collins, Chris Lambert and Roger Wilson (the "ODRC Defendants") (ECF No. 64). Plaintiff has filed Replies. (ECF Nos. 67, 68.) For the following reasons, the motion (ECF No. 62) is **DENIED**.

**I.**

Plaintiff Kevin Burke filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 7, 2021, naming as Defendants the Ohio Department of Rehabilitation and Correction ("ODRC"), Warden Emma Collins, and Director Annette Chambers-Smith. (ECF No. 1.) On July 2, 2021, Plaintiff filed an Amended Complaint (ECF No. 13) setting forth additional claims pursuant to § 1983 as well as a claim under 42 U.S.C.§ 1985 and naming as additional Defendants Christopher Lambert ("Lambert"), Roger Wilson (Wilson"), Global Tel*Link Corporation ("GTL"), and John Doe Employees of GTL.

1

Plaintiff was employed by ODRC as a Corrections Officer at the Pickaway County Correctional Institution located in Orient, Ohio, but was terminated on October 15, 2020, for alleged violations of employee conduct standards. (First Amended Complaint, ECF No. 13 at ¶ 5; ¶¶ 19-21.) According to the Notice of Removal dated October 6, 2020, Plaintiff's termination resulted from Facebook posts dated between May 28, 2020 and June 17, 2020. (ECF No. 13-2.) The Notice informed Plaintiff that his conduct was

> a violation of the Standards of Employee Conduct section and Social Media, and Standards of Employee Conduct Rules:
>
> #13-Improper conduct or acts of discrimination or harassment on the basis of race, color, sex, age, religion, national origin, disability, sexual orientation, gender identity or military status.
> #39-Any act that would bring discredit to the employer.

(ECF No. 13-2 at 3.)

A report prepared by GTL and dated June 19, 2020, included the following findings:

> PCI Corrections Officer Kevin Burke publicly posted substantial amounts of racial and politically charged content on his personal Facebook profile. In several posts, Burke appeared to incite violence against rioters involved with the George Floyd and/or Black Lives Matter movement. On June 13, London Correctional Institution Corrections Officer Michael Estep commented on one of Burke's posts, referring to rioters as "trash of the earth." On June 13, PCI Maintenance Repair Worker Brandon McLaughlin commented on a post stating, "Set up death matches for food and let them turn on each other and kill one another." On June 10, Burke posted, "Antifa has taken over Seattle. Please try that in my neighborhood. You will be killed for fun." On June 6, PCI Corrections Officer Jacob Thornsberry commented on a post regarding a war memorial being destroyed. He stated that those responsible "should he shot on sight." On May 29, Burke posted, "So called protestors destroying property deserve a bullet to the head." On June 2, Burke posted, "Just so you know, if you decide to riot in my neighborhood – sticks and stones may break windows but hollowpoints expand on impact." PCI Corrections Officer Jason Thornsberry commented on Burke's post, which he jokingly stated, "So does silverback rounds. Lol!!"

(ECF No. 13-3.)

An arbitration proceeding was held on October 26, 2021. (ECF No. 63-1.) GTL employee Brian Santiago appeared and testified at the hearing. (*Id.*) Mr. Santiago explained that

he received a request from Mr. Lambert to investigate social media posts, the process he undertook to obtain Plaintiff's Facebook posts, and that he had drafted a report in June 2020. (*Id*.)

Plaintiff brings claims under 42 U.S.C. § 1983 alleging various Constitutional violations. First, Plaintiff asserts that ODRC's social media policy violates his First Amendment rights and his Due Process rights under the Fourteenth Amendment. (Counts I through III.) Additionally, Plaintiff contends that ODRC violated his Fourth Amendment rights by the unlawful search and seizure of his private property without probable cause. (Count IV.) Similarly, Plaintiff claims that Defendants Lambert, Wilson and GTL violated both his First Amendment and Fourth Amendment rights by the unlawful search and seizure of his private property without probable cause. (Counts V and VI). By Opinion and Order dated January 10, 2022, the Court dismissed Plaintiff's claim under 42 U.S.C. § 1985. (ECF No. 31.)

On March 3, 2022, the Court entered an Amended Preliminary Pretrial Order establishing revised case management deadlines, including an amendment deadline of March 11, 2022. (ECF No. 44.) Discovery closed on January 31, 2023. (ECF No. 58.) Plaintiff filed his current motion seeking to file a Second Amended Complaint on February 4, 2023. (ECF No. 62.) According to Plaintiff, he seeks to amend for two reasons: (1) to challenge the constitutionality of Rules of Conduct 13 and 39 (ECF No. 68 at 13 "All the Second Amended Complaint does is clarify that the [Social Media Policy] is enforced by Rules 13 and 39 and are part constitutional violation as recited in the original Complaint"); and (2) to assert a claim against Mr. Santiago. Both GTL and the ODRC Defendants contend that Plaintiff has not established the good cause necessary to permit amendment after the Court ordered deadline of March 11, 2022. The Court considers the parties' arguments below.

3

## II.

When a motion to amend is brought after the deadline set within the court's scheduling order, a party must satisfy the standards of both Rule 15(a) and 16(b)(4). *Carrizo (Utica) LLC v. City of Girard, Ohio*, 661 F. App'x 364, 367 (6th Cir. 2016) (citing *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)). "Once the scheduling order's deadline to amend the complaint passes, . . . a plaintiff *first* must show good cause under Rule 16(b) for failure earlier to seek leave to amend and the district court must evaluate prejudice to the nonmoving party before a court will [even] consider whether amendment is proper under Rule 15(a)." *Commerce Benefits Grp. Inc. v. McKesson Corp*, 326 F. App'x 369, 376 (6th Cir. 2009) (internal quotation marks and citation omitted) (emphasis added); *cf. Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, Nos. 10-6102 & 11-5174, 2012 WL 4945607, at *17 (6th Cir. Oct. 18, 2012) ("Rule 15 is augmented by Rule 16, which states that the generally wide latitude to amend may be restricted by the court's other scheduling orders.").

Under Rule 16(b)(4), the Court will modify a case scheduling "only for good cause . . . ." Fed. R. Civ. P. 16(b)(4). The party seeking modification of the case schedule has the "obligation to demonstrate 'good cause' for failing to comply with the district court's scheduling order . . . ." *Pittman ex rel. Sykes v. Franklin*, 282 F. App'x 418, 425 n.5 (6th Cir. 2008). In determining whether good cause exists, the primary consideration "is the moving party's diligence in attempting to meet the case management order's requirements." *Commerce*, 326 F. App'x at 377 (internal quotation marks and citation omitted); *see also Leary*, 349 F.3d at 906 (quoting 1983 advisory committee notes to Fed. R. Civ. P. 16) ("But a court choosing to modify the schedule upon a showing of good cause, may do so only 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"). Finally, the Court must also consider "potential

4

prejudice to the nonmovant . . . ." *Leary*, 349 F.3d at 909. Even if an amendment would not prejudice the nonmoving party, a plaintiff must still provide good cause for failing to move to amend by the Court's deadline. *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010); *see also Wagner v. Mastiffs*, Nos. 2:08-cv-431, 2:09-cv-0172, 2011 WL 124226, at *4 (S.D. Ohio Jan. 14, 2011) ("[T]he absence of prejudice to the opposing party is not equivalent to a showing of good cause.").

If the proponent of a belated amendment demonstrates good cause under Rule 16(b)(4), a court will then evaluate the proposed amendment under Rule 15(a). *Commerce*, 326 F. App'x at 376. Pursuant to Rule 15(a), the Court should freely grant a party leave to amend his or her pleadings "when justice so requires." Fed. R. Civ. P. 15(a). Rule 15(a) sets forth "a liberal policy of permitting amendments to ensure the determination of claims on their merits." *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (internal quotations omitted). As the United States Court of Appeals for the Sixth Circuit has noted, "[f]actors that may affect [a Rule 15(a)] determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008). In determining prejudice, the Court examines "whether the assertion of the new claim would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McLellan*, 30 F.3d 658, 662–63 (6th Cir. 1994).

### III.

Initially, the Court notes Plaintiff's failure to set forth a meaningful good cause argument in his motion. As explained above, late filed amendments require a good cause finding and

central to such a finding is whether Plaintiff has acted diligently in his efforts to seek leave to amend. Although Plaintiff cites to Rule 16(b), his motion does not address the issue of his diligence. At most, Plaintiff offers that "critical information clearly helpful to [his] case was provided in recently disclosed depositional discovery." (ECF No. 62 at 6.) This lone statement, however, says nothing of the central issue of his diligence. To be sure, Plaintiff addresses the issue in his reply brief. However, the Court "need not consider an argument raised for the first time in a reply brief." *Chapman v. Meharry Med. Coll., No*. 21-5866, 2022 WL 4242394, at *2 (6th Cir. June 15, 2022) (citing *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018). Thus, the Court has sufficient reason to summarily deny Plaintiff's motion. Nevertheless, Defendants have addressed the deficiencies of Plaintiff's motion such that they will not be prejudiced. Accordingly, the Court will proceed to consider the issue.

As indicated, Plaintiff's good cause argument centers on the timing of depositions. According to Plaintiff, under "the timeline of the discovery process," which was delayed because he could not access his Facebook account, he could not take Mr. Santiago's deposition until January 19, 2023, or Warden Collins' deposition until January 18, 2023. (ECF Nos. 67 and 68 at 6.) This lack of access, by Plaintiff's own admission, was the result of Plaintiff allowing his Facebook account to be disabled and his lack of knowledge of both his current login credentials or the email associated with the account. Plaintiff explains that this "hurdle" required the assistance of the ODRC Defendants' expert and, once this expert provided a report and a supplemental report in October and November 2022, the scheduling of depositions immediately began. (ECF No. 67 at 2; ECF No. 68 at 4.) In Plaintiff's view, "it would not [have been] prudent or economic, either judicially or temporally" to take the depositions of Mr. Santiago or Warden Collins before the examination of his Facebook account had been completed. (ECF No.

6

67 at 6; ECF No. 68 at 5.) Apparently, at least in part, Plaintiff was attempting to avoid the potential need for second depositions. (*Id.*)

Plaintiff's good cause argument fails. First, a couple of quick points. Plaintiff explains that these depositions were delayed in an effort to minimize resources and expense. This explanation does not meet the test for good cause. *Dart Bank v. JPMorgan Chase Bank, N.A.*, No. 1:22-CV-761, 2023 WL 3198810, at *2 (W.D. Mich. Mar. 15, 2023) (holding that, while laudable, the desire to minimize expenses does not meet the test for good cause in this circuit). Moreover, this argument demonstrates "a choice not to meet the deadline, not an inability to meet the deadline despite reasonable efforts." *Id.*; *see also Owens v. Owens*, No. 1:20-CV-115-SKL, 2021 WL 10912889, at *5 (E.D. Tenn. May 14, 2021) (quoting *Camps v. Gore Cap., LLC*, No. 3:17-cv-01039, 2020 WL 7337300, at *2 (M.D. Tenn. Dec. 14, 2020) ("Even if counsel is responsible for a failure to comply with Scheduling Order deadlines, '[c]ourts in this circuit have found that [c]arelessness or attorney error is insufficient to constitute good cause.'") (additional citations omitted).

Further, the delay in discovery that Plaintiff cites is, by his own explanation, solely attributable to his actions relating to his Facebook account. Thus, while a party delayed in discovering the basis for amending its pleadings due to circumstances beyond its control may use that delay as a basis for arguing that a Rule 16(b) order deadline should be extended, that is not the situation Plaintiff describes. *See Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-CV-0569, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007) (citing *Noyes v. Kelly Services,* 488 F.3d 1163 (9th Cir. 2007)). Plaintiff cannot expect to rely on his self-created delay to demonstrate good cause for his admittedly untimely amendment.

Additionally, and importantly, this Plaintiff-created delay related to his Fourth

7

Amendment claims. Or, as Plaintiff describes it, "[t]his information was necessary for all parties in order to determine certain liabilities depending upon whether the Plaintiff's Facebook was unauthorizedly accessed." (ECF No. 67 at 2.) The issue of allegedly unauthorized access to his Facebook account forms the basis of Counts Four, Five and Six of in Plaintiff's First Amended Complaint. (ECF No. 13.) The Court's review of Plaintiff's proposed Second Amended Complaint reveals that the allegations of these particular Counts remain substantially unchanged.[1] Notably, Plaintiff does not argue otherwise. Thus, it seems the cited delay has no discernible substantive connection to Plaintiff's proposed amendments.

This fact underscores the Court's point above that Plaintiff has demonstrated "a choice not to meet the amendment deadline, not an inability to meet the deadline despite reasonable efforts." *Dart Bank*, 2023 WL 3198810, at *2. Indeed, it suggests Plaintiff's interpretation of his self-occasioned discovery delay as a ticket to an open-ended amendment deadline. Plaintiff's casual approach to Court ordered deadlines, however, fails to recognize that,

> … deadlines are important things. And when the Court establishes deadlines, the parties are obliged to follow them." *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 239 (E.D. Ky. 2018). "Scheduling orders are critical in moving cases to a just outcome in an efficient manner. In order to accomplish this end, deadlines 'must have teeth' and must be enforced by the courts." *Birge v. Dollar General Corp.*, 2006 WL 133480, at *1 (W.D. Tenn. Jan. 12, 2006) (citations and quotation marks omitted).

*In re Onglya (Saxagliptin) & Kombiglyze XR (Saxagliptin & Metformin) Prod. Liab. Litig.,* 570 F. Supp. 3d 501, 506 (E.D. Ky. 2021), *objections overruled sub nom. In re Onglyza*, No. 5:18-MD-2809-KKC, 2021 WL 5410242 (E.D. Ky. Mar. 19, 2021); *see also In re Onglyza*

---

[1] It does appear that in Paragraph 98 of the proposed Second Amended Complaint Plaintiff now seeks to identify GTL alternatively as ViaPath. (ECF No. 62-1.) This is consistent with other proposed amendments, including Paragraph 9 of the proposed Second Amended Complaint which states: "Defendant Global Tel*Link Corporation became ViaPath technologies in January of 2022 and is the successor of and carrying on the business of GTL." (*Id.*)

*(Saxagliptin) & Kombiglyze XR (Saxagliptin & Metformin) Prod. Liab. Litig.,* 570 F. Supp. 3d 473, 476–77 (E.D. Ky. 2020) (quoting *Birge,* 2006 WL 133480, at *1) ("'a court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril….'"); *Edwards v. Grand Rapids Cmty. Coll.,* No. 1:09-CV-1067, 2010 WL 2163823, at *2 (W.D. Mich. May 27, 2010) ("a court's case management order is not … a meaningless piece of paper that a party may ignore at his whim."). And, it bears emphasis that Plaintiff missed the amendment deadline not by a brief period of time but by nearly eleven full months. Not only that, but between May 17, 2022 and September 15, 2022, two extensions of the case management deadlines were sought and granted and neither involved a request to extend the amendment deadline.[2] (ECF Nos. 52 and 58.)

A. Diligence

More significantly, however, "[t]he focus of the diligence issue under Rule 16(b) is not how quickly [Plaintiff] moved to amend once he became aware of this information. Rather, . . . the focus of the issue is **whether the information could have been discovered …, with any diligence, prior to the scheduling deadline**." *Stanich v. Hissong Grp., Inc.*, No. 2:09-CV-143, 2011 WL 1560650, at *4 (S.D. Ohio Apr. 25, 2011) (emphasis added). The above issues aside, this issue really is the heart of the matter here – whether Plaintiff did not learn of the information underlying his proposed amendments until the depositions of Mr. Santiago and Warden Collins despite his exercise of diligence. Without question, the information underlying Plaintiff's proposed amendments not only could have been discovered prior to the amendment deadline, it appears that, in large part, it was. The Court considers each proposed amendment in turn.

---

[2] These extension requests followed the Court's entry of the Amended Preliminary Pretrial Order on March 3, 2022 (ECF No. 44) which, in and of itself, extended the deadlines set forth in the initial Preliminary Pretrial Order issued on April 20, 2021. (ECF No. 11.)

1. **Proposed Amendments relating to Rules of Conduct 13 and 39**

   In his initial motion, Plaintiff asserts the following:

   > … in Plaintiff's First Amended Complaint [Doc #: 13 Filed: 07/02/21 PAGEID #: 88-110] Plaintiff averred the following:
   >
   > 19. Rule 13 of the of Standards of Employee Conduct [Complaint Exhibit 1] forbids "Improper conduct or acts of discrimination and harassment on the basis of race, color, sex, age, religion, national origin, disability, sexual orientation, gender identity or military status."
   >
   > 20. Rule 39 of the of Standards of Employee Conduct forbids conduct defining the violation in its entirety as "Any act that would bring discredit to the employer."
   >
   > 21. Plaintiff was terminated October 15, 2020 for alleged violations of Rule 13 and Rule 39 of the of (sic) the Standards of Employee Conduct. The Plaintiff was removed from his employment by Notice of Removal by Warden Emma Collins as the appointing authority and approved by the Director Annette M. Chambers-Smith over signature "av". [Complaint Exhibit 2]. The Notice of Removal enumerates 17 separate factual allegations, separated by line spacing, that constitute the basis for removal. The allegations do not identify if one or both of the alleged rule violations apply to the individually enumerated allegations.

   The deposition testimony of Defendant Warden Collins, in her deposition taken January 18, 2023, identified that ALL the individual postings provided by GTL in its report to ODRC violated both Rules 13 and 39 of the Defendant ODCR Rules of Conduct. That comprised ALL the evidence for terminating the Plaintiff identified on the Plaintiff's Notice of Removal [Doc #: 13-2 PAGEID #: 130] violated both Rules 13 and 39 of the Defendant ODCR Rules of Conduct.

   …

   … Defendant Collins had her deposition taken January 18, 2023 and testified for the first time regarding the Rules of Conduct violations of the Plaintiff. Based on that testimony, the Plaintiff now seeks leave to amend the Plaintiff's Complaint to comport with the evidence admitted in the testimony by the Defendant ODRC through Warden Collins at her deposition.

(ECF No. 62 at 1-2; 2-3.) In conclusion, Plaintiff describes Warden Collins's testimony as

"stunning and revealing … that minus one exception, every single posting reported by GTL

10

as made by Plaintiff violated ALL the rules of conduct and policies with which the Plaintiff was charged. (*Id*. at 6.)

In the face of this, the ODRC Defendants assert that, despite Plaintiff's characterization, this proposed amendment does not rely on newly found evidence. Rather, as these Defendants note, that Plaintiff's Facebook posts and comments were found to have violated the Social Media Policy and Rules 13 and 39 has never been a secret. Indeed, the Notice of Removal, which Plaintiff attached to his two prior complaints, so stated. Thus, at the time Plaintiff filed his initial complaint, he was not precluded from challenging the constitutionality of these Rules. Moreover, these Defendants assert, many of the arguments Plaintiff raises are not yet ripe for consideration.

Put gently, Plaintiff's arguments in reply to the ODRC Defendants are not models of clarity. To the best of the Court's ability to understand, Plaintiff argues that the proposed amendment challenging the constitutionality of Rules of Conduct 13 and 19 arises from the ambiguity of the "language on the Notice of Removal … as to which of the 17 identified posts or comments violates which Rules…." (ECF No. 68 at 3.) According to Plaintiff, this ambiguity arises, at least in part, from the fact that, one of the enumerated items set forth in the Notice, "You identified yourself on Facebook as works at State of Ohio, OCSEA Chapter 6550 President Pickaway Correctional Institution," does not facially appear to violate Rules 13, 39 or the ODRC's Social Media Policy." (*Id*. at 2.) In Plaintiff's view, "knowing what Policies/Rules that the Defendants enforced against [him] is essential to his claims regarding their constitutionality because the [Social Media Policy] can only be enforced by the Rules of Conduct. The Plaintiff is entitled to determine what the exact facts were in relation to what was enforced to removed him." (*Id.* at 3.)

11

By way of further tangled explanation, Plaintiff asserts that Warden Collins's deposition testimony revealed that she "made no decision on any individual posting as to whether it violated Rule #39, did not further testify about any Rule #13 violations and simply lumped Plaintiff's conduct into one amorphous mass." (ECF No. 68 at 9.) In Plaintiff's view, Warden Collins's deposition testimony indicated that she was "arbitrary and capricious … in interpreting the [Social Media Policy] and Rules 13 and 39 as demonstrated by her explanation of her "disciplinary review and interpretation of Rule language." (*Id.* at 8.) Plaintiff contrasts Warden Collins's alleged discipline of other individuals for activities similar to his.

The ODRC Defendants clearly have the better argument on this point and little discussion is required. As they note, Plaintiff did attach the Notice of Removal to both his original and First Amended Complaints. (ECF No. 1-2 and ECF No. 13-2.) The first page of that Notice states:

> This letter is to advise you that you are being issued a Removal
>
> from the position of Corrections Officer             effective October 15, 2020.
>
> for the following infractions:    ☐ Absenteeism    ☒ Performance

| Rule 13 | Improper conduct or acts of discrimination or harassment on the basis of race, color, sex, age, religion, national origin, disability, sexual orientation, gender identity or military status. |
|---|---|
| Rule 39 | Any act that would bring discredit to the employer. |

(*Id.*)

A complaint need only state a claim that is plausible on its face, meaning the court could draw the reasonable inference that the defendant is liable for the misconduct alleged. *Quintairos, Prieto, Wood & Boyer, P.A. v. PCPMG Consulting, LLC*, No. CV 5:18-176-KKC, 2022 WL 1658413, at *3 (E.D. Ky. May 25, 2022) (citing *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011)). Plaintiff could have plausibly included the proposed challenges to the constitutionality of Rules 13 and 39 prior to the amendment deadline based on the Notice alone. Indeed, his current motion confirms this. More significantly, his original and First Amended Complaints confirm this. (ECF No. 1 at ¶ 17; ECF No. 13 at ¶ 21 "Plaintiff was terminated October 15, 2020 for alleged violations of Rule 13 and Rule 39 of the [] Standards of Employee Conduct.")

Plaintiff's late-crafted arguments attempting to demonstrate good cause do nothing to change this reality. For example, his claim that the language of the Notice is ambiguous is to no avail. As Defendants point out, it is not clear why it is important to know whether one, four or all posts violated both Rules or only one. The Notice clearly states that the removal is based on violation of both rules. For purposes of pleading the constitutional challenge to each Rule Plaintiff now seeks to pursue, that is sufficient information.

Moreover, to the extent Plaintiff claims ambiguity, he admits that he sought to address it in his Interrogatory No. 3 "which was answered by Defendant ODRC on **May 7, 2021**." (ECF No. 68 at 3) (emphasis added). He then explains that "Defendant ODRC did not … identify which posts/comments specifically violated which rule of SMP." What he does not explain is his attempt to address this issue further, to the extent he found it necessary for purposes of an amended pleading. Instead, he simply reiterates a litany of the documented case activity which he deems responsible for the delayed depositions. Plaintiff's recitation, however, confirms a

fundamental misunderstanding of the applicable good-cause standard. Again, the focus of the diligence issue is not how quickly Plaintiff moved to amend after Warden Collins's deposition or why, under the unfolding circumstances of discovery, he chose not to depose Warden Collins earlier. The only focus "is whether the information could have been discovered …, with any diligence, prior to the scheduling deadline." *Stanich,* 2011 WL 1560650, at *4.

Without question, the information necessary to plausibly alleged the unconstitutionality of Rules 13 and 39 was in Plaintiff's possession at the time he filed his original Complaint. Thus, Plaintiff has not demonstrated diligence such that the scheduling order's amendment deadline could not reasonably have been met. *See Garza v. Lansing Sch. Dist.,* 972 F.3d 853, 879 (6th Cir. 2020) (upholding district court's finding that plaintiff had had all the necessary information to alleged a *Monell* claim both at the time she filed her original complaint and prior to the expiration of the amendment deadline despite claimed new evidence following deposition); *First State Bank v. Peoples Bank, N.A.*, No. 2:17-CV-1156, 2019 WL 13203282, at *3 (S.D. Ohio June 6, 2019) (denying amendment where Plaintiff failed to explain why it could not meet the amendment deadline, particularly with the emails it had in its possession at the outset of this case); *see also Quintairos,* 2022 WL 1658413, at *3 (denying amendment where plaintiff could have reasonably included a plausible claim in an amended complaint prior to the amendment deadline); *Profitt v. Highlands Hosp. Corp.,* No. CV 7:19-15-KKC, 2021 WL 4988856, at *4 (E.D. Ky. Oct. 27, 2021) (same).

2.   **Proposed Amendment to Add Claim Against GTL Employee Brian Santiago Alleging Violations of the First and Fourteenth Amendments**

Much of the above analysis carries over to Plaintiff's proposed allegations against Mr. Santiago. Plaintiff asserts that he seeks to add Mr. Santiago "as a Party Defendant in the place of the John Doe Defendants appearing in the caption of the original and First Amended Complaint."

(ECF No. 62 at 1.)³ He explains that this proposed amendment is based on newly discovered evidence obtained during Mr. Santiago's deposition on January 19, 2023. (ECF No. 67 at 10.) As Plaintiff describes it, Mr. Santiago's deposition "was the first moment in time that he established through his own testimony that although he had previously testified at arbitration that he had been given 'specific instructions' and a 'specific directive', that in fact no definition of any term was ever provided by ODRC for him to select any posting of the Plaintiff to his Facebook page." (*Id*.) In Plaintiff's view, this caused Mr. Santiago's status to change "to acting under color of law upon his own determination of what to report to ODRC." (*Id*. at 11.) Accordingly, as Plaintiff explains it, this "gives rise to [Mr. Santiago's] individual liability." (*Id*.)

In response, GTL asserts that it identified Mr. Santiago as a witness in its initial disclosures in January 2022; identified him in numerous discovery responses on April 25, 2022; and produced over 200 pages of documents, including emails from Mr. Santiago. Further, Mr. Santiago testified at Plaintiff's arbitration hearing on October 26, 2021. According to GTL, Mr. Santiago testified similarly at both his deposition and the arbitration hearing such that Plaintiff has not demonstrated diligence.

Again, Plaintiff's good cause explanation is confusing. It appears to be largely dependent on Plaintiff's parsing of Mr. Santiago's arbitration testimony as compared to his deposition testimony. Apparently, in Plaintiff's view, the testimonies vary in significant ways. From a

---

³ To be clear, despite Plaintiff's description, his proposed Second Amended Complaint does not add Mr. Santiago "as a Party Defendant in the place of the John Doe Defendants." Count VI of the proposed pleading continues, in part, to be directed to John Doe employees of GTL. More accurately, the proposed pleading asserts an entirely new claim (Count VII) against Mr. Santiago. As Plaintiff represents, however, his proposed pleading does not identify John Doe Defendants in its caption.

review of GTL's comparison set forth in the Appendix to its response (ECF No. 63 at 13-15), which the Court incorporates herein by reference, the Court is not convinced that this is so. Regardless, Plaintiff's semantics exercise falls flat.

As stated above, a complaint must state a claim that is plausible on its face, meaning the court could draw the reasonable inference that the defendant is liable for the misconduct alleged. *Quintairos,* 2022 WL 1658413, at *3. By Plaintiff's own admission, his "Counsel was aware from the deposition transcript that Mr. Santiago was responsible for investigating and developing information from Plaintiff's Facebook account." (ECF No. 67 at 6.) Plaintiff does not explain, however, his attempt to address Mr. Santiago's involvement further, to the extent he found it necessary for purposes of pleading Mr. Santiago's individual liability. Instead, Plaintiff relies on the same previously discussed litany of documented case activity which he deems responsible for the delayed depositions.

As above, Plaintiff's recitation confirms a fundamental misunderstanding of the applicable good-cause standard. Again, the focus of the diligence issue is not how quickly Plaintiff moved to amend after Mr. Santiago's deposition or why, under the unfolding circumstances of discovery, he chose not to depose Mr. Santiago earlier. The only focus "is whether the information could have been discovered …, with any diligence, prior to the scheduling deadline." *Stanich,* 2011 WL 1560650, at *4. The Court concludes that it could have been. Current pleading standards do not require Plaintiff to set forth every specific factual detail in order to assert a claim for individual liability against Mr. Santiago. Thus, Plaintiff has not demonstrated diligence such that the scheduling order's amendment deadline could not reasonably have been met. *See Garza,* 972 F.3d at 879; *First State Bank* 2019 WL 13203282, at *3; *see also Quintairos,* 2022 WL 1658413, at *3*; Profitt,* 2021 WL 4988856, at *4.

Finally, the Court notes that Plaintiff states that the proposed Second Amended Complaint eliminates his previously dismissed § 1985 claims. There is no need for a Second Amended Complaint to address this circumstance.

**B. Prejudice**

"[P]rejudice to the non-moving party is a consideration for good cause, though it is secondary to the moving party's diligence." *Reed v. Columbia Gas Transmission LLC,* No. 2:22-CV-3417, 2023 WL 3250532, at *4 (S.D. Ohio Apr. 14, 2023) (citing *Cooke v. AT&T Corp.,* No. 2:05-CV-374, 2007 WL 188568, at *2 (S.D. Ohio Jan. 22, 2007). With respect to his proposed amendments addressed to alleged unconstitutionality of Rules 13 and 39, Plaintiff contends that the ODRC Defendants will not suffer any prejudice because the constitutionality challenge presents a question of law. As a result, in Plaintiff's view, no additional discovery will be necessary. Plaintiff offers the same argument with respect to his proposed claim directed to Mr. Santiago. For their part, Defendants argue that at least some discovery will be necessary resulting in the need to reopen discovery causing delay of both the case schedule and the ultimate resolution of this action. In particular, GTL argues that Mr. Santiago, of course, would have the right to vigorously protect his interests.

"'The Sixth Circuit has specifically held that allowing amendments to a complaint after the close of discovery imposes prejudice on the non-moving party.'" *Profitt,* 2021 WL 4988856, at *5 (quoting *Bustetter v. CEVA Logistics U.S.*, No. 18-58-DLB-EBA, 2019 WL 1867430, at *3 (E.D. Ky. Apr. 25, 2019)(citing *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 641 (6th Cir. 2018) (collecting cases)). Moreover, the Court is not required to accept Plaintiff's self-serving conclusion that no additional discovery is necessary. Further, Plaintiff undercuts his own

17

assertion by admitting that he too may need to undertake additional discovery "if any defendant discloses something that clearly should have been disclosed during the discovery period." (ECF No. 67 at 12.) In short, it is likely that granting Plaintiff's motion for leave to amend will result in the need for additional discovery and accompanying motions practice. This would substantially drag out the proceedings in a case that already has suffered above-described delays and is mere days away from hitting the two-and-a-half-year mark. Taking all of this into account, Plaintiff has failed to demonstrate the lack of prejudice.

For these reasons, Plaintiff has failed to meet the good cause requirement under Rule 16(b). Accordingly, the Court need not address whether leave to amend is appropriate under Rule 15(a) and therefore, will not consider the additional arguments set forth by the parties.

## IV.

For the reasons set forth above, Plaintiff's Motion for Leave to Amend the Complaint (ECF No. 62) is **DENIED.**

**IT IS SO ORDERED.**

**Dated: JUNE 26, 2023**　　　　　　　　　　　　**/s/** *Elizabeth A. Preston Deavers*
　　　　　　　　　　　　　　　　　　　　　　　　**ELIZABETH A. PRESTON DEAVERS**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**